FILED

E-FILED
Wednesday, 13 September, 2006  11:50:16 AM
Clerk, U.S. District Court, ILCD

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS



**ALPINE**
LANDSCAPE, INC.

11932 Spaulding School Dr.  -  Plainfield, Illinois  60585        Phone: 815-439-5747

September 8, 2006

United States District Court
151 U.S. Courthouse
600 E. Monroe Street
Springfield, Il 62706

Re:  RAILROAD MAINTENANCE AND INDUSTRIAL HEALTH AND WELFARE FUND
     vs.
     ALPINE LANDSCAPE SERVICES, INC.

Case Number:  06-3096

To whom it may concern:

This response was sent to the Plaintiff's Attorney: James P. Moody of Cavanagh & O'Hara at: 407 East Adams Street, Springfield Illinois 62701 on September 8, 2006.

Sincerely,

Dave Cale
President,
Alpine Landscape, Inc.





FILED

SEP 1 2 2006

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT COURT

11932 Spaulding School Dr. - Plainfield, Illinois 60585    Phone: 815-439-5747

September 4, 2006

James P. Moody
Cavanagh & O'Hara
407 East Adams Street
Springfield, IL 62701

Re:  RAILROAD MAINTENANCE AND INDUSTRIAL HEALTH AND WELFARE FUND
vs.
ALPINE LANDSCAPE SERVICES, INC.

Case Number:  06-3096

Mr. James P. Moody,

Prior to the original signing of the Landscaping Memorandum Of Agreement ("Agreement") on 12/2/2002, Alpine Landscape, Inc. was contacted by Sarang Corporation requesting a proposal for a project in Wilmington, Illinois in September 2002.  Since Alpine had no work at the time, Alpine fulfilled their request and was awarded the job in October of 2002. That was Alpine's first and only commercial project.  Alpine rented all the necessary equipment from Rental Max to complete the project.  In the middle of the project, a man by the name of Carlos Villalpando representing Local 150, approached an Alpine employee asking for his union card, which he did not have because he's not in the union.  Mr. Villalpando then requested to meet with the owner of Alpine. Then I, Dave Cale, met with Mr. Villalpando and he told me that Alpine has to be a Union business and has to employ "Equipment Operators" for that project and all commercial projects utilizing the equipment on site.

Upon signing the agreement, I told Mr. Villalpando this was not a typical Alpine project and he said for any future "High Profile" (i.e. all Landscape Commercial Projects), it would be necessary to employ "Equipment Operators" to operate all the equipment mentioned in the signed Agreement. Mr. Villalpando guaranteed me that if I have "No Work" (projects not covered by this agreement) there is no need to employ an Equipment Operator, as stated in the Landscape Construction Labor Agreement.  Mr. Villalpando also said he would provide leads for potential commercial landscape projects.  I never acted upon any of the leads, as my company is too small to full fill any commercial landscape project.

Alpine Landscape, Inc. does not employ individuals who are members of the Operating Engineers Local 150. We do not conduct projects that require Equipment Operators to be employed.  If we did I would contact the Union to provide us with Equipment Operators for that project. Since 2002, Alpine Landscape, Inc. has not contracted in any commercial landscape projects. As mentioned in the Landscape Construction Labor Agreement all employees who operate equipment listed in the Scope of Work for commercial landscape construction projects are entitled to benefits and all other employees are excluded, hence my employees are excluded.

• Alpine Landscape, Inc. is an extremely small business generating gross revenue of $230,000 to $350,000 per year depending on customer referrals. Alpine's main source of income is designing a custom computer generated "creative" landscape designs for clients (i.e. non- commercial), to assist / perform in the work and the annual maintenance of their property.

Alpine Landscape, Inc. conducts business in the following:

1. In house custom computer generated residential landscape designs.
2. Single family installations
3. Single family mulch installations
4. Single family Spring and Fall Clean-ups
5. Single family Lawn Maintenance
6. Single family Landscape Lighting
7. Single family Christmas Lights

Therefore, all of these projects are non- commercial and do not require a need for Equipment Operators, as mentioned in the Agreement., as such Alpine Landscape, Inc. is excluded to make contributions.

The last time I called and spoke with Dora Crenshaw who represents Railroad Maintenance and Industrial Health and Welfare Fund was on or around November 16 of 2005 to indicate my situation. I told Ms. Crenshaw, as I had on many occasions, Alpine Landscape, Inc. does not perform commercial projects that require the employment of equipment operators therefore; Alpine does not owe any contributions. I requested to be removed from her contact list, but she demanded to schedule an audit.

The audit took place in December 2005. Larry Williams from Romolo and Associates conducted the audit. The audit lasted all but 15 minutes. Larry was given copies of all customer invoices and employee payroll records. Larry concluded my business was not applicable to make contributions to the union.

All Alpine employees are General Labors who assist me on specific jobs. The necessary skills are the ability to cart a wheel barrel around, the use of hand tools and a valid driver's license. Alpine's employees are all willing to give a statement acknowledging their responsibilities and stating they are Non- Members of Local 150. Larry Williams from Romolo and Associates wrote down all the Social Securities numbers' of Alpine's employees, which can be used as evidence to support my claim that they are non-union employees.

For the record, Mr. Peter Vogel is a (Past Registered Agent) former business partner's (Steve Muck) family friend and is no longer the registered agent. The current registered agent is Mr. Mario Correa 3010 W. Diversey, Chicago, Illinois 60647.

If you wish to conduct a 2nd audit or spend the day with me to review my business my door is wide open and again you will find, Alpine to be inapplicable to the agreement; furthermore Alpine Landscape, Inc. will not be responsible for any and all costs associated with any of the investigations of the Railroad Maintenance and Industrial Health and Welfare Fund and others.

Sincerely,

Dave Cale
President,
Alpine Landscape, Inc.

Cc: United States District Court
151 U.S. Courthouse
600 E. Monroe Street
Springfield, Il 62706

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

CENTRAL _____ DISTRICT OF _____ ILLINOIS

RAILROAD MAINTENANCE AND INDUSTRIAL
HEALTH AND WELFARE FUND,

Plaintiff,

**SUMMONS IN A CIVIL CASE**

V.

ALPINE LANDSCAPE SERVICES, INC.,

Defendant.

CASE NUMBER: _O6 · 3096_

TO: (Name and address of defendant)

David Cale, President -- PERSONAL SERVICE ONLY
11932 Spaulding School Drive
Plainfield, IL 60544

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

James P. Moody
Cavanagh & O'Hara
407 East Adams Street
Springfield, IL 62701
(217) 544-1771

an answer to the complaint which is herewith served upon you, within ___twenty (20)___ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of
time after service.

_Served_
_5/29/06 @ 8:45 pm_

s/John M. Waters

CLERK

_5/24/06_

DATE

s/Barb Race

(BY) DEPUTY CLERK

# LANDSCAPE CONSTRUCTION LABOR AGREEMENT

## Between

## THE ILLINOIS LANDSCAPE CONTRACTORS BARGAINING ASSOCIATION

## And

## INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 150, AFL-CIO

## Effective

## December 1, 2005 through December 31, 2008

**TABLE OF CONTENTS**

ARTICLE 1 - RECOGNITION ...............................................................................................1

ARTICLE 2 - MANAGEMENT ............................................................................................1

ARTICLE 3 - UNION SHOP ................................................................................................1

ARTICLE 4 - WORKING HOURS AND CONDITIONS ...................................................3

ARTICLE 5 - UNIT WORK...................................................................................................5

ARTICLE 6 - WAGES ..........................................................................................................5

ARTICLE 7 – SCOPE OF WORK........................................................................................6

ARTICLE 8 - VACATIONS ...............................................................................................10

ARTICLE 9 - GRIEVANCE AND ARBITRATION .........................................................11

ARTICLE 10 - UNION INSPECTION ...............................................................................13

ARTICLE 11 – VERIFICATION OF IMMIGRATION.....................................................14

STATUS/CONFIDENTIALITY .........................................................................................14

ARTICLE 12 - DISCHARGES ...........................................................................................14

ARTICLE 13 – SENIORITY...............................................................................................15

ARTICLE 14 – HEALTH AND WELFARE ......................................................................15

ARTICLE 15 - PENSION FUND ........................................................................................17

ARTICLE 16 – INDUSTRY ADVANCEMENT FUND....................................................18

ARTICLE 17 - EXISTING BENEFITS ..............................................................................19

ARTICLE 18 - FEDERAL AND STATE LAWS AND REGULATIONS .......................19

ARTICLE 19 - NO DISCRIMINATION ...........................................................................20

ARTICLE 20 - STRIKES AND LOCKOUTS ...................................................................20

ARTICLE 21 - SUCCESSORS AND ASSIGNS ...............................................................20

ARTICLE 22 - MISCELLANEOUS...................................................................................20

ARTICLE 23 - EFFECT AND TERMINATION ...............................................................21

i

**Section 2.    Minimum Wage Rates for Recently Promoted Plantsmen**

(a)    The Employer may promote employees in the Plantsman classification to the Equipment Operator classification and pay a reduced wage rate of TWO DOLLARS ($2.00) below the wage rate identified in Section 1 of this Article under the following circumstances:

(1)    If the Employer has on its payroll five (5) to ten (10) equipment operators, the Employer may promote one Plantsman to the Equipment Operator classification and pay the reduced wage rate to that one Plantsman.

(2)    If the Employer has on its payroll eleven (11) to fifteen (15) equipment operators, the Employer may promote two Plantsmen to the Equipment Operator classification and pay the reduced wage rate to those two Plantsmen.

(3)    If the Employer has more than 15 equipment operators on its payroll, it may promote Plantsmen to the Equipment Operator classification in a number not to exceed 20% of its current Equipment Operator workforce. In other words, at no time shall the number of employees receiving the reduced equipment operator rate described in Section (a) above exceed 20% of the number of Equipment Operators receiving the full scale wage rate identified in Section 1 of this Article.

(b)    The Employer may pay the reduced wage rate to a recently promoted Plantsman for a period not to exceed 1280 hours. Once a Plantsman is promoted to the Equipment Operator classification (even if receiving the reduced rate) he may not be demoted to Plantsman except for legitimate performance issues.

(c)    Nothing in this Article shall amend or alter the Employer's obligation to pay the fringe benefits described in Articles 14 and 15 of this Agreement.

## ARTICLE 7 – SCOPE OF WORK

**Section 1.    Covered work.** The work covered by this Agreement shall include the operation of the equipment listed below on all commercial landscape construction projects.

(a)    Equipment covered by this Agreement includes, but is not limited to:

> Telehandler
> Mini Excavator
> Skid Steer Loader and other similar type machines (1½ cubic yard or less)
> Chipping Machine
> Combination Backhoe and Front Endloader (1½ cubic yard or less)
> Fork Lift Truck
> Hireach and Highranger

6

Hydro Seeder[2]
Hydraulic Boom with Clam
Seated Sod Installer
Straw Blower and Seeder
Stump Machine
Tractors, Crawlers, Rubber Tire Tractors, Highlift Shovels or Front End
    Loaders (1½ cubic yards or less)
Tree Spades - "All"
Utility Tractor and Landscape Attachments (1½ cubic yards or less)

(b)    All other equipment utilized for performing landscape work, tree trimming or removal of trees, and to (1) install plants, (2) transport trees, (3) excavate plant pits, (4) place soil and other landscape materials, and (5) apply finish landscape material on subgrade prepared by others.

**Section 2.    Preparation of subgrade.**

(a)    Equipment used to apply finish landscape material on subgrade prepared by others is covered by this Agreement.

(b)    Except as specified in Section 5, below, the Employer shall pay the applicable wage and fringe benefit rates in the applicable Heavy, Highway and Underground Agreement when equipment is used for the preparation of subgrade prior to the application of finish landscape materials and utilization of any equipment over 1½ cubic yards, as determined by the manufacturer's rated capacity.

**Section 3.    Golf Courses.**

(a)    The preparation around greens and sand traps on existing golf course for the purpose of laying sod for controlling erosion and the planting of trees and bushes shall be included in this Agreement and the Employer shall pay the wages and fringe benefits identified in Articles 7, 14, 15 of this Agreement when that work is performed.

(b)    The Employer shall pay the applicable wage and fringe benefit rates in the applicable Local 150 Heavy, Highway and Underground Agreement when equipment not listed in Section 1 above is used for the preparation of subgrading on the construction of the new golf courses and the reconstruction of existing golf courses.

**Section 4.    Mass Tree Clearing.**

The Employer agrees to pay the applicable wage and fringe benefit rates in the applicable Local 150 Heavy, Highway and Underground Agreement when employees operate equipment for purposes of mass tree clearing for the construction of new roads, housing developments and golf courses.

---

[2] This classification will only be included within the equipment operated under the terms of this agreement when the Employer has determined to assign the operation of such equipment to employees represented by Local 150, as opposed to those employees represented by Teamsters Local 703.

7